OPINION
{¶ 1} Appellant, Francine M. Esposito, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the State Personnel Board of Review ("board") that dismissed appellant's appeal for lack of jurisdiction. Because the common pleas court properly determined the board's order is supported by substantial, reliable and probative evidence and is in accordance with law, we affirm.
 {¶ 2} By letter dated May 19, 1999, appellee, the Ashtabula County Alcohol, Drug Addiction, and Mental Health Services Board, offered appellant "a full-time exempt position" with appellee as the Director of Administration. According to the letter, appellant was subject to a 90-day probationary period, during which she could be dismissed without the right to a grievance procedure. She was terminated from her position as Director of Administration on April 5, 2001. In response, appellant wrote a letter to the board, which the board construed as an appeal. Because the board has jurisdiction only over employees in the classified service, the board conducted a hearing, through its Administrative Law Judge ("ALJ"), to determine whether appellant's position was in the classified service with appellee.
 {¶ 3} Following a hearing, the ALJ issued a report with findings of fact and conclusions of law. In it, the ALJ determined appellant was a program director pursuant to R.C. 124.11(A)(18) and therefore was exempt from the classified service. Over appellant's objections, the board adopted the ALJ's report and recommendation, and it dismissed appellant's appeal for lack of jurisdiction. Appellant appealed to the common pleas court, which affirmed the board's order. Appellant appeals, assigning the following errors:
1. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN HOLDING THAT THE APPELLANT COULD NOT ACCEPT AN APPOINTMENT TO AN UNCLASSIFIED POSITION AND THEREAFTER CONTEND THAT HER POSITION SHOULD BE CLASSIFIED.
2. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY HOLDING THAT THE APPELLANT WAS A PROGRAM DIRECTOR BECAUSE SHE WAS RESPONSIBLE FOR THE FISCAL PROGRAMS OF THE APPELLEE.
 {¶ 4} In reviewing an order of the board, the common pleas court must uphold the order if it is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 119.12; Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. By contrast, an appellate court, in reviewing the decision of the common pleas court, must determine if the common pleas court abused its discretion in its review of the board's order. Id. In questions concerning the interpretation or application of relevant law, however, our review on appeal is plenary.Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp.Relations Bd. (1992), 63 Ohio St.3d 339, 343.
 {¶ 5} Appellant's two assignments of error contest the two alternative bases the common pleas court set forth in affirming the board's order. We first address the second assignment of error, as it is dispositive. In the second assignment of error, appellant contends the common pleas court erred in holding that appellant was a program director pursuant to R.C. 124.11(A)(18).
 {¶ 6} Following a hearing before the ALJ, the ALJ issued a report and recommendation. In it, the ALJ reviewed the testimony of the two witnesses presented at the hearing: Gregory Ecklund, who served as the Executive Director of appellee at all pertinent times, and appellant. As the ALJ noted, Ecklund testified appellant was responsible for handling the fiscal and accounting functions of appellee, interfacing the computer systems, including the statewide computer system known as MACSIS, and supervising two employees.
 {¶ 7} In implementing those core duties, appellant's responsibilities included accurately accounting for funds received from state and levy funds and preparing a monthly statement for review. Appellant also was the contact person between appellee and the contract agencies. In that role, she apprised the agencies of when and how they would receive their funding monies. In addition, she worked with Heartland East, a collaboration of different Alcohol, Drug Abuse, and Mental Health Services Boards, to ensure proper processing of claims. Although appellant had the discretion to delegate some aspects of her work, appellant retained overall responsibility for the tasks.
 {¶ 8} Ecklund also testified that appellant's duties included her ensuring that appellee's agencies delivered services to eligible clients under Title XIX and XX of the Medicaid Contract, preparing reports, and asking the state to "send us the money." (Tr. 27.) As a supervisor of two employees in appellee's offices, appellant kept track of other employees' projects, gave them assignments, trained employees on the telephone, delegated work, and counseled employees on tardiness.
 {¶ 9} Appellant's testimony, by contrast, countered much of Ecklund's testimony by characterizing her position with appellee primarily as a bookkeeping function. Specifically, although appellant admitted she completed spreadsheets, she stated she did not develop the figures for them. Even though appellant testified she worked with Richard Thomas, the accountant consultant, she also averred he directed her on fiscal functions. Although she stated she worked on the MIS system, she testified her function merely was to ensure the computers were up and running. According to appellant, the accountant consultant selected the business software, the fiscal consultant prepared the spreadsheet, and appellant simply inputted entries into the computer.
 {¶ 10} Similarly, despite appellant's testimony that she maintained the MIS system, she stated she did not establish it. Even though she arrived at the time the MACSIS system was being implemented, she avowed the state directed her activities with respect to it. Although appellant attended board meetings, she stated she never led them. Although she was told to supervise two employees, she testified her supervision amounted to signing vacation forms for which Ecklund had final approval. In short, appellant claimed she made no major decision alone; Ecklund reviewed almost everything.
 {¶ 11} In resolving the conflicting accounts of the office responsibilities, the ALJ noted that, on cross-examination, appellant was shown her resume, prepared after appellee terminated her employment, and appellant admitted she listed her job with appellee as "Director of Administration." In that context, her resume indicated she was responsible for fiscal management, cash flow reports, input to Quicken, and work on purchase order systems.
 {¶ 12} The ALJ thus concluded that appellant, as the Director of Administration, was basically responsible for the fiscal functions of appellee. (Finding of Fact No. 2.) In that regard, appellant "prepared cash flow reports; input receipts and disbursements on Quicken; reconciled the county Auditor's financial statements; maintained the purchase order system with the Auditor's office; maintained an Excel spreadsheet showing revenue, expenses and allocations; prepared financial disbursement forms for the state; assisted in the preparation of [appellee's] budget; maintained spreadsheets for Medicaid and for federal and state grants; maintained the MACSIS claim system and assisted in analysis of data; and maintained the MIS system for [appellee]." (Findings of Fact No. 3.)
 {¶ 13} The ALJ further found that appellant worked with two consultants on Medicaid audits and "was the only employee in the office to know how to operate the system to randomly pull files for the audit." (Findings of Fact No. 4.) Although appellant did not have policymaking authority and could not hire and fire employees, the ALJ concluded appellant, "signed as the supervisor approval for vacation and sick leave for two employees." (Finding of Fact No. 5.) Lastly, the ALJ noted that appellant maintained the accounting for funds totaling approximately $4.5 million, attended all board meetings, and supplied information regarding the accounts to Ecklund. (Findings of Fact No. 6.)
 {¶ 14} Observing that R.C. 124.11(A)(18) exempts from the classified service the executive directors, deputy directors and program directors employed by alcohol, drug addiction, and mental health services boards under R.C. Chapter 340, the ALJ initially determined appellant was not the executive director, because Ecklund held that position. Since the remaining categories, deputy director and program director, were not defined in the statute or Black's Law Dictionary, the ALJ turned to theRandom House Dictionary. The ALJ there found a "program" is "1. a plan of action to accomplish a specified end * * * 2. a plan or schedule or activities, procedures, etc., to be followed." (ALJ Report and Recommendation, 11.) Looking to Black's Law Dictionary for the definition of "director," the ALJ found a "director" to be "[o]ne who, or that which directs; as one who directs or regulates, guides or orders; a manager or superintendent, or chief administrative official." (ALJ Report and Recommendation, 11.)
 {¶ 15} Employing those definitions, the ALJ concluded appellant was responsible for the fiscal functions of appellee "whereby money from many different sources was funneled through Appellant Esposito for distribution to the community agencies. She was also in charge of the MIS system and responsible for keeping the computers up and running as well as being the one who put the MACSIS computer system into motion." (ALJ Report and Recommendation, 12.)
 {¶ 16} Although the ALJ found that appellee had consultants who did higher level work, the ALJ also determined appellant was responsible for the day-to-day operations of appellee's fiscal work. Thus, even though "Appellant Esposito tried to belittle her responsibilities, they are the core of [appellee's] purpose." (ALJ Report and Recommendation, 13.) Accordingly, the ALJ recommended that the appeal be dismissed for lack of jurisdiction, since appellant's duties placed her in the unclassified position of a program director under R.C. 124.11(A)(18).
 {¶ 17} Appellant filed objections to the ALJ's report and recommendation. In them, appellant contended she did not serve in the requisite fiduciary relationship needed to make her an unclassified employee. The objections further contended appellant could not be a program director because, contrary to the listing of programs in former R.C. 340.03, she was not in charge of appellee's mental health programs, alcohol and drug addiction programs, or preventative, treatment, rehabilitative, or consultative programs.
 {¶ 18} R.C. 124.11(A)(18) does not require a fiduciary relationship in order for a program director to be in the unclassified service. Rather, serving as a program director in itself renders the employee unclassified. While R.C. 124.11(A)(9) speaks to a fiduciary or administrative relationship with the agency, R.C. 124.11(A)(18) does not, and the lack of a fiduciary relationship between appellant and Ecklund does not negate the ALJ's determination that appellant was a program director for appellee.
 {¶ 19} Instead, the issue resolves to whether the evidence supports the ALJ's determination, affirmed in the common pleas court, that appellant performed the duties of a program director. Appellant contends that, as a matter of law, she could not have fulfilled those functions, because she was not responsible for any of the alcohol, mental health, or treatment programs that appellee funds. Contrary to appellant's contentions, however, the use of "program" in former R.C. 340.03, former R.C. 340.033, and R.C. 340.04 does not support her argument. According to the testimony, appellee generally does not provide alcohol, mental health, or treatment programs. Rather, it assists in funding them by receiving monies from funding agencies and forwarding them to service agencies so that those agencies are able to provide the necessary services. As the ALJ aptly noted, the core of appellee's function is fiscal, and appellant was put in charge of appellee's fiscal responsibilities. She was given discretion in her duties, subject to the overall approval of Ecklund, and in carrying out her duties she implemented appellee's primary function.
 {¶ 20} Applying the common definition of program director, as did the ALJ, we conclude appellant served as a program director for appellee by her duties in the primary function of appellee: the receipt of funding monies and the distribution of those monies to the appropriate service agencies. See Chari v. Vore (2001), 91 Ohio St.3d 323 (concluding that in the absence of a statutory definition, "we must apply the word's usual, normal or customary meaning"). Accordingly, the common pleas court did not abuse its discretion in concluding appellant was a program director for appellee. Appellant's second assignment of error is overruled.
 {¶ 21} Appellant's first assignment of error asserts the trial court erred in applying Chubb v. Ohio Bur. of Workers' Comp. (1998),81 Ohio St.3d 275 to this case. In reviewing the board's order, the common pleas court cited Chubb and noted that an employee may not accept "an appointment to an unclassified position and thereafter contend that his or her position should be classified." (Common Pleas Court Decision, 5.)
 {¶ 22} Because appellant was a program director with appellee, the common pleas court did not need to analyze and apply the Chubb decision to this case. Accordingly, we need not determine whether the record supports the application of Chubb in this instance. Even in the absence of the estoppel issue discussed in Chubb, appellant served as a program director for appellee. Pursuant to R.C. 124.11(A)(18), appellant properly was found to be in the unclassified service, leaving the board without jurisdiction to consider her termination. Accordingly, appellant's first assignment of error is moot.
 {¶ 23} Having overruled appellant's second assignment of error, rendering moot her first assignment of error, we affirm the judgment of the common pleas court.
Judgment affirmed.
BOWMAN and KLATT, JJ., concur.