ESTATE OF WARNER D. HUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31968.   Promulgated April 16, 1930.

*Charles K. Arter, Esq.*, and *Walker H. Nye, Esq.*, for the petitioner.

*Harry Leroy Jones, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: Section 302(c) of the Revenue Act of 1924 provides:

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*     \*     \*     \*     \*     \*     \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of Part I of this title; \* \* \*

Section 402(c) of the Revenue Act of 1921 contains the same language.

Although the brief of counsel for the respondent states that he " does not concede that the transfer was not in contemplation of death," he directs his argument solely to the contention that the " enjoyment " of the transferred shares was postponed until death.

Under the facts set forth above, we are of the opinion that the transfer of 1,200 shares of the capital stock of the Western Reserve Condensed Milk Co. from the decedent to his wife, Florence W. Hunt, the present petitioner, on January 13, 1922, was not made in contemplation of death within the purview of the statute. *Philip T. Starck, Executor*, 3 B. T. A. 514; *United States Trust Co. of New York, Executor*, 14 B. T. A. 312; *William L. Nevin, Executor*, 16 B. T. A. 15 (see cases therein cited); *Emily P. Pratt, et al., Executrices*, 18 B. T. A. 377. On that date the decedent was in good general health and excellent spirits. There is no indication that he had any thought or suspicion of impending death. He was a man of 54 years of age, athletically inclined, and, with the exception of the slight stroke in 1921 and occasional attacks of indigestion, due to overeating, was in good physical condition. Furthermore, he pos-

sessed a cheerful, hopeful and optimistic disposition. His mental attitude was not consonant with the idea of impending death.

The transfer of stock by Warner D. Hunt to his wife on January 13, 1922, was based on tangible considerations. It was more than a mere voluntary donation. It was an attempt on the part of the decedent to reimburse his wife for the large amount of money which she had advanced to him over a long period of years to aid him in his business ventures and to assist in the financial burdens of the home. His action was motivated by a recognition of his moral obligation to repay her contributions and by a desire to fulfill that obligation. At the time of the transfer there was no stipulation or even a suggestion that it was intended to take effect at or after death. On the contrary it was the expression of a long cherished purpose and plan of the decedent to compensate his wife, partially at least, for her loyal support and to relieve his own mind of the fancied stigma of having been dependent on her money.

The transfer was considered and accepted as an absolute transfer by the decedent and his wife. Likewise, it was so regarded by the bank officers, who required Mrs. Hunt to sign a " power of hypothecation " authorizing the retention of the stock certificates as collateral security for the preexisting loan of the decedent. If Mrs. Hunt had not been the new owner such a requirement would have been unnecessary.

The Uniform Stock Transfer Law, section 8671–1, Ohio G. C., contains the following provision:

Title to a certificate and to the shares represented thereby can be transferred only

(a) By the delivery of the certificate endorsed over in blank, or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby.

Under the laws of Ohio, therefore, the title to the stock passed to Mrs. Hunt on January 13, 1922.

We have held that where a transfer is absolute there is involved no question of whether it was intended to take effect in possession or enjoyment at or after death. *George Heipershausen, et al., Executors*, 18 B. T. A. 218. The fact that the assignment made by the decedent to his wife on January 13, 1922, constituted a complete and unequivocal transfer of title to the stock is fully supported by the evidence. It is none the less absolute because the donor retained or exercised some of the rights and privileges usually incident to stock ownership. *Estate of James F. Foster*, 13 B. T. A. 496. Nor does the failure to have such stock transferred on the books of the company impair the validity of the transfer. *Estate of James F. Foster, supra; George W. Dulany, Jr., et al.*, 17 B. T. A. 486. See also *Ewalt v. Ames*, 6 Ohio App. 374; *McCoy v. Gosser*, 8 Ohio App. 145.

Moreover, the decedent and his wife used and enjoyed jointly the dividends accruing from the stock of the Western Reserve Condensed Milk Co. for their joint needs. They placed all their income from whatever source in their joint bank accounts and withdrew from those accounts in accordance with their individual and community requirements.

We are of the opinion that the transfer of stock made by the decedent to his wife on January 13, 1922, was not made with the intention that it should take effect in possession or enjoyment at or after death.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*